So let's just say, we'll leave the other two to the side, let's say we don't agree that there was a knock on the asbestos, because you agree that there's less on that than the other two. The differential here, is it valid if Dr. Shinoda does not distinguish between those three? If it is insufficient and yet he talks about all three causes, is that enough? Or is the district court right in dismissing if that's in fact the case that there's not enough on the asbestos? No, the district court still would not be correct in dismissing because of what Dr. Chiodo's actual testimony was. And again, with respect to the district court, it simply got this wrong. Dr. Chiodo said very specifically that, and this is on page 262 in his deposition, Mr. Lancaster's exposure, quote, to diesel exhaust, silica, and asbestos, above what the average person would have had exposure made for a reasonable basis, that whether it's for diesel exhaust, asbestos, or silica, doesn't have to be all three. Any one of them would cause Mr. Lancaster to have an increased list of lung cancer, above and beyond what the average person would have, even given his smoking history. So Dr. Chiodo's point is, any one of these, and again, think about the FELA standard, right? It just has to be a likely cause, no matter how small. And what he's saying here, and I appreciate that the railroad is trying to say that we believe FELA changes Dover. It does not change Dover. But what he has to testify, still, is that one or more of these causes played a part, no matter how small, in bringing about the lung cancer that caused Mr. Lancaster's death. And that's exactly what Dr. Chiodo testified. Furthermore, I point the court to the Bearhugger case, I love that name, from 2021, from this court, where they said that the factual basis of an expert's opinion, that is the 703 part, not the 702 part, goes to the credibility of that expert, and not the admissibility of his testimony. So to the extent, in Dover itself, the Supreme Court says that these kinds of challenges are handled by cross-examination. Dr. Chiodo can take the stand. And he can be asked, by defense counsel, maybe with a defense expert out there as well, the jury can have the full picture. He can be asked, well, even if there was asbestos or not, would that have changed your opinion? And he already gave us what his answer would be. But these are things that go to weight, and not admissibility. Suppose, though, and this is not this case, I understand that. But suppose there's 10 potential causes that Dr. Chiodo testifies to. And the other expert only identifies two or three. Is that still an admissible expert report when there's seven or eight causes that are never mentioned as being present at the website? How far does this go, in other words? Under the FELA, I think that's – if this were a negligence case, that would be different. But under the FELA, I still think that's sufficient, given what the FELA's purposes are and what the standard for causation is there. As long as there is some cause that – and by the other expert, I'm assuming you meant the foundational expert. Yes. I still think under the FELA that's enough. None of the cases that the railroad relies on have anything to do with this kind of an issue. They have Wright from 1996, Marmo from 2006, and Blaine from 2008. None of those are FELA cases. And in all of them, the causation expert, in the end, was not actually able to testify to any causation at all. You know, the railroad's primary argument here is that there is no sufficient foundation because we couldn't show what they call the amount and duration of exposure, the specific – the levels of exposure, determining the level of exposure. That's not what this is about. I mean, as this Court held in other cases, we cite Bonner from 2001, Mattis from 2002, and Kirk, which Judge Shepard joined from 2018, that a plaintiff only has to make a threshold showing that he was exposed to toxic levels known to cause the type of injuries he or she suffered. That's Mattis. And then in Kirk, you know, as long as the expert can rule in the exposure as some potential cause without being even able to quantify it or rule out some other potential causes, it's admissible because those failures all go away. Well, that's exactly what we have here. The notion that, you know, maybe Dr. Zimmerman's foundation wasn't good enough and therefore Dr. Chiodo couldn't opine on it, those are all questions of weight, not admissibility. I want to go through – What does the fact that the history of smoking is thrown into the mix, what does that do here? Because that's not related to the railroad at all. And it's still offered factually as a source of exposure that could lead to the illness. So Dr. Chiodo rules in three causes, the railroad exposures that he believes, that Dr. Zimmerman stated, age, and smoking. And then in his deposition, I think he also says radon. But he says, well, there's no evidence of radon, so I can rule that out. Age wouldn't really be an issue here because the risks are the same regardless. And then he's left with smoking. And you're right, Your Honor. He says that he can't definitively rule out Mr. Lancaster's smoking as a possible cause. However, he goes on to say that given these exposures he had at the railroad, those are still a likely cause of his lung cancer. Now this court Would that be similar? Would that then be, in a way, make the testimony as to the history of smoking, which is not attributable to the railroad, in the same category as very weak evidence of asbestos? No, I don't think so, Your Honor. So I point the court to the Prempro case, which is from this court in 2009, which also concerned getting cancer. In that case, it was from a drug that was alleged to have been defective. And there, the experts also said, just as here, where some of the plaintiffs, I think there was a class action, where some of the plaintiffs had smoked and they couldn't rule out smoking, that still just goes to the weight. Because even in that case, just as here, the experts also said that despite the smoking, they still believed that the deficient drug was a cause of the cancer. And that's exactly what Dr. Chiodo said here. And I think it bears note again that this is under the FELA. And under the FELA, it's not just that we have this lower standard of causation, but you don't have to apportion the damages between railroad causes and non-railroad causes. The FELA itself allows that this kind of circumstance exists, where you'll have a possible other cause as well, as long as the expert can say that the railroad exposures were a likely cause, no matter how small. I also wanted to ask, did Dr. Zimmerman find multiple sources of the diesel fumes or exhaust? I remember some testimony about soaking ropes with diesel, burning them in order to thaw out rails and exposure from that source. But was that the only source of diesel exhaust that was mentioned? It was during rail repair. No, there was also, I think this is page 355, and also Mrs. Lancaster's testimony as well went to this too, that they used this kind of truck that drives on the rails to do the rail repair, called a high rail, which itself spewed great amounts of diesel, and that was in this tunnel as well. I see I'm into my rebuttal time. I'd like to reserve the rest. Thank you, Your Honor. Mr. Scheinberg. Good morning. May it please the Court that I will show you for BNSF Railway Company. The District Court excluded Dr. Scioto because his causation opinion was contradicted by the facts. He never bridged the gap between general and specific causation, and he did not perform a reliable differential ideology. Any one of those reasons was enough to exclude Dr. Scioto. The real problem with his testimony was that he made assumptions based on Dr. Zimmerman, the expert's testimony, what he thought Dr. Zimmerman was going to say. It turned out, especially in Dr. Zimmerman's deposition, that's not the exposures that he assumed were not the reality. In fact, they were contradicted by Dr. Zimmerman. My friend, Mr. Scheinberg, says all this should just go to weight and not invisibility, but that disregards both the abusive discretion standard and the District Court's gatekeeping role under Rule 702 and out. Opinions that lack foundation or inconsistent with the facts are inadmissible, and the District Court was correct to exclude Dr. Scioto's testimony, but at a bare minimum, it didn't abuse his discretion. This Court has reiterated in cases like Bonner v. ISB Technologies that this Court doesn't replicate the Dauber analysis. The Trust District Court moves without analysis unless there was a clear abuse of discretion. So what does the record show about what Dr. Zimmerman testified about exposure to diesel and asbestos? Yeah, so for asbestos, it was very clear. And again, especially, maybe a little bit ambiguous in his report, he got really, really clear in his deposition. For asbestos, Dr. Scioto says in Appendix 193 that he was exposed beyond background. Zimmerman says, I'm not opining that he had major exposure to asbestos. That's Appendix 433. Later, he got even more clear. He couldn't testify that he was ever exposed, and if he was, that it exceeded background levels. And that's in Appendix 435 to 436. So that's asbestos, diesel exhaust. Dr. Scioto again says in Appendix 193 that that was a potential cause because of his high exposure. Zimmerman, quote, diesel exhaust is not an issue in this case, Appendix 454, because his exposure was low. Diesel combustion fumes. That's the road-soaked diesel combustion fumes. That's the only source of diesel combustion fumes that Dr. Zimmerman considered because diesel exhaust was already out. He said that's not an issue in this case. Scioto, again, Appendix 193, that's a potential cause. But Zimmerman, Appendix 469, said he didn't know if he was ever exposed, and if he was, to what degree or how often, and he was candid. That's why the district court gave him credit for being candid and not speculating on exposures that he couldn't support. It's not the case with Dr. Scioto. Dr. Scioto misunderstood those exposure opinions and said that they were a cause and couldn't rule them out, and clearly Dr. Zimmerman is not in favor of exposures. I was just going to ask, didn't Dr. Zimmerman rely in his report, in addition to his investigation from work records, about the work environment, didn't he also rely on delay evidence from co-workers and family members? He did. Particularly about the diesel exposure? And that's where he did. Okay, so then my follow-up question is this. Why is it enough if we assume that the basis for Dr. Scioto's opinion is weak with respect to asbestos and silica? Why isn't this somewhat strong factual basis on the diesel exhaust exposure, why isn't that enough for this case to go forward? Because it's still, you have the expert, Dr. Scioto, rendering an opinion that it's, in addition to the history of smoking, are likely causes of cancer. Why isn't that enough? Well, Dr. Zimmerman said that there wasn't, he couldn't verify diesel combustion fumes, and he said the diesel exhaust was an issue. But the district court found that on silica, that he did say that there were exposures that may have exceeded limits there. But the problem is, and this is what the district court noted, that Dr. Scioto never said, well, that's a cost. That's an independent cost. He always grew a bit in it. He talked about the synergistic effect. In fact, he refused to... Well, isn't that an impossibility? An impossibility to... To single out one cause or one exposure as the single cause of the illness. I don't think he has to single out, he has to say that it was a cause. The problem is that he was including things as potential causes that had no exposure. So, I mean, out of the gate, that makes his opinion unreliable, if he doesn't have foundation for three of the four exposures that he's opining on. What about the fact that he phrased it in the disjunctive, Dr. Scioto, where he said this or that, silica or asbestos or smoking, all could have been causes of the cancer? The problem is that he never said that those individual things were... I mean, his testimony, Frank, was kind of muddled on this. And he would say, it's not... I'm not saying... In fact, he said, quote, the issue to me is not did Mr. Mancaster get lung cancer from asbestos. Not did he get it from diesel. Not did he get it from silica. Did he get it from his work? So he was saying, you know, this is all kind of thrown up in the air as this synergistic effect of exposures that Mr. Lancaster clearly didn't... or there wasn't evidence that he was exposed to. That lack of foundation makes his opinion unreliable from the outside. Just so I understand, you do concede that Dr. Zimmerman testified that there was an above background exposure to silica, right? That's what the district court found. And on appeal, are you challenging that finding? No, no. Okay. Well, counsel, just thinking about your statement, and I may be completely off base in this kind of analysis, but wouldn't this lead to a situation where the plaintiff would have a stronger case if there was only one source of exposure? That would be stronger under your analysis than if there were two or more strong sources of exposure. Well, there would be... I suppose if he actually had evidence of more exposures, that would be a stronger case. But that's the bottom line. Well, no, because you just said that the flaw is that the expert couldn't identify the single cause. Well, he didn't have to identify the single cause, but when he's opining on cause, specific cause especially, he has to opine what the exposure was. First of all, there had to be actual exposure that he's basing his opinion on, for it was so much to be his opinion supported by sufficient facts. But he also, to make it reliable, he has to connect the dots. And that's the other problem the district court identified. His opinion was essentially a general causation opinion, because he'd say he basically never identified what the threshold level would be, never indicated that Mr. Lancaster's exposure to anything exceeded that level of exposure. And I think the example of Radon is something he ruled out. And this kind of shows the way he was analyzing these potential causes. This is page 290 of the appendix. The only one I can kind of rule out, I think, because Dr. Zimmerman isn't bringing it up, is Radon. If in cross-examination if Dr. Zimmerman says, well, you know, Radon is also a possibility, then that remains. I can't eliminate that. So that remains. That was the extent of his differential ideology. If exposure, any evidence of exposure, a possibility of exposure, as he says, with Radon, then that would put him back in and eliminate it. So I'm going to ask you the opposite of the question I asked opposing counsel, which is suppose that we have two of the three here. We have all the same statements, but we have high exposure to silicon dust, and we have high exposure to diesel combustion. Turns out, though, that there's no evidence of high exposure to asbestos. Again, same statements, the or sort of statements. Would that be foundationally unreliable because the third element is not present in the workplace? I think it is. In Ray's wholesale brochures case, the court said, any misstep in the analysis renders the opinion unreliable. And that would be if an expert is opining on saying that specific causation attaches to exposure that didn't actually exist. That's a problem with reliability. And if the district court excludes that, that's not an abuse of discretion. In fact, my friend cannot cite a single case by this court where this court reversed the district court on an abuse of discretion for lack of foundation. But there are cases where district courts were reversed as abuse of discretion for not excluding an expert where there wasn't foundation. And if the idea here that it would be confusing to the jury, so you have an expert come in, testifies that, oh, all of these bad chemicals are present. And it turns out that the foundational expert just said, no, one of those things was present, not all three of them. That's right. And as the district court said, that's not helpful to the jury because it doesn't help the jury to determine what was separated from the lawful conduct from the unlawful conduct, and it's confusing. And so that's the bottom line. And obviously that's the purpose of the gatekeeping role the district court has in Rule 702, is to prevent the jury from being confused and have, actually, a helpful testimony. The other issue I wanted to bring up in Bonner, in an implied version today, my friend relies on Bonner-Madison curve. Each of those cases, there were two things about those cases. First of all, each of them was an abuse of discretion case. This court said the district court didn't abuse its discretion in its rulings on the admissibility of the expert. Exactly the opposite position that my friend is arguing today. Second, each of those cases have what this case doesn't. They have experts saying that there was a level of exposure that exceeded a safe level, that the plaintiff, the facts support that the plaintiff was exposed beyond that level, and that that was the cause of the cancer. That's not what we have. That's not what Dr. Zimmerman or especially Dr. Scioto testified. Second, just a minor point, the appellant also talks about this, that we're not saying you should water it down in a felid case. That's really what they are saying. They're saying that you take a light touch in a felid case. But that argument has been roundly rejected by five of the sister circuits. The most prominent, the Carr case, out of the 9th Circuit. Of course, this evaluation is distinct. Dauberg and Fila and they don't impact each other. Which stands to reason, because the district court is fulfilling its gatekeeping role to prevent unreliable testimony that would confuse or be unhelpful to the jury. If there's any more questions, we ask that you affirm the district court's exclusion of Dr. Scioto and as a consequence, affirm Grants Zimmerman's judgment. Thank you. Thank you, counsel. Mr. Sternberg. Mr. Representative, I want to hit a few points here. First, yes, this is an abuse of discretion analysis. However, as the court held in Johnson and a whole bunch of other cases we cite on pages 24 to 25 of our brief, and all of which this court reversed for misapplication of Dauberg, that's an error of law, and an error of law can also be an abuse of discretion. As for this notion that this court has never reversed where a district court found there wasn't sufficient foundation, Bearhugger is the most recent example of that. In Bearhugger, it was challenges to general causation medical experts, analyses of studies, and supposed deficiencies in their factual bases that led the district court to exclude their opinions. This court reversed and held that that was an abuse of discretion because it misapplied Dauberg. Judge Shepard, you asked my friend in the opposition about whether the reliance on testimony was enough. Mrs. Lancaster obviously did testify, and Dr. Zimmerman in his report relies on some other people who testified, including supervisors and co-workers of Mr. Lancaster. In Bonner and Mattis, and we're citing those for a legal application, the court held that that sort of testimony, of the plaintiff themselves even, or someone else, is enough, even without being able to show that there was a specific exposure. This notion, they don't use the term dose response because they know that every court that has heard that, at least in this circuit and all the others we cite, have rejected this notion, that there doesn't have to be some showing of an exact amount of exposure because otherwise, in a case like this, it would amount essentially to a time machine rule, right, where you have an injury that there's an exposure and it doesn't manifest an injury until years or decades later. Well, they could never recover unless they were able to travel through time and take those precise measurements. In every court that's heard that has rejected that notion as well. Mr. Schoenberg said that Dr. Zimmerman never said silico wasn't the cause. That's absolutely not true. I already quoted that back to the court earlier. Everything that opposing counsel said goes to weight and not invisibility. We'd ask the court to reverse. All right. Thank you very much, counsel. I appreciate your arguments this morning. The case is submitted. And the court will render a decision as soon as possible. You may stand to the side. Ms. McKee, would you call our next case? Yes, Your Honor.